UNITED STATES DISTRICT COURT
DISTRICT OF KANSAS
KANSAS CITY DIVISION

| | |
|---|---|
| ATAIN SPECIALTY INSURANCE COMPANY, a Michigan corporation, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) ) Case No. 2:23-cv-2400 |
| EAGLE'S POINTE, LLC, a Kansas limited liability company, | ) ) ) ) |
| and | ) ) |
| MATTHEW HANCOCK, individually and on behalf of the Estate of DENNIS HANCOCK, deceased, | ) ) ) ) |
| Defendants. | ) ) |

## COMPLAINT FOR DECLARATORY JUDGMENT

The Plaintiff, ATAIN SPECIALTY INSURANCE COMPANY ("Atain"), files this Complaint for Declaratory Judgment against the Defendants, EAGLE'S POINTE, LLC ("Eagle's Pointe"); and MATTHEW HANCOCK, individually and on behalf of the Estate of DENNIS HANCOCK, deceased, (collectively, "Hancock"), and in support, states:

### NATURE OF ACTION

1. This is an action for declaratory relief under 28 U.S.C. § 2201 (2022) and Fed. R. Civ. P. 57 (2022) to establish the absence of coverage under a Commercial General Liability ("CGL") insurance policy issued to Eagle's Pointe, for a lawsuit arising out of alleged bodily injuries and wrongful death, brought by Hancock (the "Hancock Lawsuit").

### JURISDICTION AND VENUE

2. Jurisdiction is proper because there is diversity of citizenship and the amount in controversy exceeds $75,000, exclusive of attorney's fees, interest, and costs.

3. Venue is proper in this district because the events giving rise to the claim occurred here. 28 U.S.C. § 1391(a)(2) (2018). More specifically, this is the district where the underlying action is venued, and where the insured risk lies. At least one of the Defendants is domiciled in this district.

4. All conditions precedent have occurred, have been performed, or have been waived.

## THE PARTIES

5. The Plaintiff, Atain, is a Michigan corporation with its principal place of business in Michigan. Atain is an authorized surplus lines insurance company under Kansas law and issued a CGL Policy to Eagle's Pointe.

6. The Defendant, Eagle's Pointe is a Kansas limited liability company with its principal place of business in Olathe, Kansas. Each of Eagle's Pointe's members is a citizen of the state of Kanssas. Specifically, Eagle's Pointe's sole members, Hugo and Elizabeth Valiente, are citizens of Kansas, and neither are citizens of Michigan.

7. The Defendant, Matthew Hancock, is a Kansas citizen and is not a citizen of Michigan. Matthew Hancock is also the administrator of the Estate of Dennis Hancock who, at the time of his death, was a citizen of Kansas residing in Olathe, Kansas and was not a citizen of Kansas. Hancock is the underlying plaintiff in a lawsuit filed against Eagle's Pointe in the Circuit Court (the "Hancock Lawsuit").

## COMMON ALLEGATIONS

8. **THE HANCOCK LAWSUIT**: Hancock filed a lawsuit in the district court, in and for Johnson County, Kansas, Case No. 23CV02795, against Eagle's Pointe. A copy of the current operative petition for damages is attached as Exhibit "A."

9. Matthew Hancock alleges he is an heir at law of Dennis Hancock, deceased, and brings the lawsuit for the wrongful death pursuant to K.S.A. § 60-1902 *et seq*. Hancock alleges he

is the duly appointed Administrator of the Estate of Dennis Hancock, pursuant to the Letters issued on April 24, 2023 by the District Court of Johnson County, Kansas, and brings this action pursuant to K.SA. § 60-1801. (Ex. A, ¶¶ 2-3)

10. Hancock alleges that Eagle's Pointe owns, operates, maintains, supervises, contracts, leases or manages an apartment complex located at 1020 W. Dennis Court, Olathe, Kansas 66061. (Ex. A, ¶ 4).

11. Hancock also alleges that Eagle's Pointe rented an apartment to Dennis Hancock, located at 1016 W. Dennis Court, Apartment B, Olathe, Kansas. Hancock alleges that Eagle's Pointe acted as the landlord of the multi-unit apartment complex located at 1016 W. Dennis Court, including Apartment B which was rented to Dennis Hancock. (Ex. A, ¶¶ 7-8).

12. Hancock alleges that starting in November 2022 Matthew Hancock, on behalf of his father Dennis, complained to Eagle's Pointe's personnel regarding the furnace in Apartment B not adequately heating the apartment. (Ex. A, ¶ 9).

13. Hancock further alleges that Dennis Hancock had reported to Eagle's Pointe in November and December 2022 that the furnace in his apartment, Apartment B, was not working to adequately heat the apartment. (Ex. A, ¶ 10).

14. Hancock alleges that Eagle's Pointe had a broad duty to use reasonable care under the circumstances to prevent harm to third parties, including Dennis Hancock. Hancock also alleges that Eagle's Pointe had a duty to comply with the Kansas Residential Landlord and Tenant Act. (Ex. A, ¶¶ 11-12).

15. Hancock further alleges that Eagle's Pointe was required to comply with the 2018 International Residential Code as adopted by Johnson County, Kansas Code of Regulations. (Ex. A, ¶ 13).

16. Hancock alleges that Eagle's Pointe had a duty to its tenants, including Dennis Hancock to comply with the requirements of applicable building and housing codes that materially affect health and safety, including maintaining in good and safe working order and condition of all heating supplied by them. (Ex. A, 14).

17. Hancock alleges that on December 23, 2022 Plaintiff Matthew Hancock found his father, Dennis Hancock in Apartment B dead. Hancock alleges that Dennis Hancock died because of environmental hypothermia. (Ex. A, ¶¶ 15-16).

18. Hancock alleges that as a direct and proximate result of Eagle's Pointe's failure to provide adequate heating in Apartment B of the property located at 1016 W. Dennis Court, Olathe, Kansas, Dennis Hancock froze to death, and Matthew Hancock sustained damages because of the death of his father. Hancock further alleges that as a direct and proximate result of Eagle's Pointe's failure to provide adequate heating, Dennis Hancock sustained a continuous decrease in body temperature which caused him immense conscious pain and suffering prior to his death. (Ex. A, ¶¶ 17-18).

19. Under Count I, Hancock alleges that Eagle's Pointe owed Dennis Hancock as its tenant a duty to act with the requisite degree of care necessary to not injure or harm Hancock and others. (Ex. A, ¶ 21).

20. Hancock alleges that Eagle's Pointe, breached its duty by failing to provide adequate heating in decedent's apartment in a careless and negligent manner in at least the following respects: (a) failing to maintain adequate heat; (b) failing to properly inspect the furnace unit in decedent's apartment; (c) failing to properly repair the furnace in decedent's apartment; (d) failing to adequately supervise its employees or agents while they inspected or maintained the furnace unit; (e) failing to warn Dennis Hancock of the condition of furnace unit in his apartment;

(f) violating the Kansas Residential Landlord and Tenant Act; and (g) failing to comply with the Johnson County Code of Regulations. (Ex. A, ¶ 22).

21. Hancock alleges that as a direct and proximate result of Eagle's Pointe's negligence, the apartment rented to the decedent was not adequately heated causing decedent Dennis Hancock to suffer and eventually die due to environmental hypothermia. Hancock further alleges that Matthew Hancock suffered damages from the death of his father and the Estate of Dennis Hancock brings claims for Dennis Hancock's conscious pain and suffering prior to his death. (Ex. A, ¶¶ 23-24).

22. Under Count II, Hancock alleges that Eagle's Pointe owed certain duties to Hancock and public, including but not limited to the duty to act in a reasonable, cautious, and prudent fashion to prevent Hancock and others from being injured on Eagle's Pointe's premises. (Ex. A, ¶ 26).

23. Hancock alleges that in December 2022, Eagle's Pointe had the duty to provide Plaintiff and other tenants with habitable apartments that were reasonably safe for them to reside in. (Ex. A, ¶ 27).

24. Hancock further alleges that because of Eagle's Pointe's acts and omissions, including but not limited to failure to properly repair the furnace, failure to properly inspect the furnace, failure to provide any warning to Hancock and others regarding the lack of adequate heat and failing to provide Hancock with a safe apartment, the apartment was not in a condition that was reasonably safe for ordinary and anticipated use. (Ex. A, ¶ 28).

25. Hancock also alleges that Eagle's Pointe knew, and by using ordinary care could have or should have known, of the unsafe conditions existing on their property, and appropriately addressed the same. (Ex. A, ¶ 29).

26. Hancock failed to exercise ordinary care to make the apartment reasonably safe, including but not limited to: (a) failing to maintain adequate heat in the apartment; (b) failing to properly inspect the furnace unit in decedent's apartment; (c) failing to properly repair the furnace in decedent's apartment; (d) failing to adequately supervise its employees and/or agents while they inspected and/or maintained and/or failed to properly repair the furnace unit; (e) failing to warn Dennis Hancock of the condition furnace unit in his apartment; (f) violating the Kansas Residential Landlord and Tenant Act; and (g) failing to comply with the Johnson County Code of Regulations. (Ex. A, ¶ 30).

27. Hancock alleges that as a direct and proximate result of Eagle's Pointe's negligence, Dennis Hancock suffered severe conscious pain and suffering prior to his death. As such, the Estate of Dennis Hancock brings claims for Dennis Hancock's conscious pain and suffering prior to his death. Hancock also alleges that a direct and proximate result of Eagle's Pointe's negligence, Matthew Hancock suffered damages from the death of his father, Dennis Hancock. (Ex. A, ¶¶ 31-32).

28. **THE POLICY:** Atain issued a CGL Policy to Eagle's Pointe as the sole named insured: Policy No. CIP405502, effective May 7, 2022 through May 7, 2023 (the "Policy"). The Policy is attached as Exhibit B to the complaint.

29. The Policy provides CGL coverage, with limits of $1,000,000 per occurrence and $2,000,000 general aggregate limit. (Ex. B, Declarations & Supplemental Declarations).

30. The principal insuring agreement in the Policy provides, in relevant part:

SECTION I – COVERAGES
COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

**1.     Insuring Agreement**

    **a.**    We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result . . .

    **b.**    This insurance applies to "bodily injury" and "property damage" only if:

        (1)    The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

        (2)    The "bodily injury" or "property damage" occurs during the policy period . . .

**2.**    **Exclusions**

This insurance does not apply to:

    **a.**    **Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. …

**SECTION V-DEFINITIONS** …

3.    "Bodily injury" means bodily injury, sickness or dis-ease sustained by a person, including death resulting from any of these at any time. …

13.    "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

(Ex. B, Form No. CG 00 01 04 13).

    31.    The Policy includes Form No. AF001754 09/16, titled "Habitability and Wrongful Eviction Exclusion," which provides, in relevant part, as follows:

This insurance does not apply and there shall be no duty to defend or indemnify any insured for any "occurrence", "suit", liability, "personal and advertising injury", demand or cause of action arising, in whole or part, from any of the following:

    1.      Any matter that pertains to habitability including, but not limited to, any of the following:

        a.      Actual or alleged Violations of any Civil Codes or Municipal Codes;
        b.      Actual or alleged Violations of any Health or Safety Codes;
        c.      Actual or alleged violations of any Housing and Urban Development laws, ordinances or statutes;
        d.      Actual or alleged violations of any rent stabilization law or ordinance;
        e.      Actual or alleged violations of any federal, state or local Section 8 law or any other government subsidized programs;
        f.      Actual or alleged violations of any administrative rules or regulations;
        g.      Any allegations or claims under common law; or
        h.      Any other claim that is related to habitability, including but not limited to sanitation, health, safety and all other matters that make a premises habitable or livable for human beings.

    2.      Breach of any lease, rental agreement, contract, warranty or covenant, written or oral, involving a duty to maintain any premises in a habitable or tenantable condition.

    3.      Any claim, by any person, for any of the following:

        a.      Actual or Constructive Wrongful Eviction;
        b.      Nuisance;
        c.      Trespass;
        d.      Wrongful entry onto any premises; or
        e.      Invasion of any right to privacy. …

(Ex. B, Form No. AF001754 09/16).

## COUNT I – NO COVERAGE
## HABITABILITY AND WRONGFUL EVICTION EXCLUSION

    32.      Atain incorporates paragraphs 1-31 as its allegations in this paragraph 32 of Count I.

    33.      The allegations of the Hancock Lawsuit allege liability against Eagle's Pointe pertaining to the habitability of Dennis Hancock's apartment.

    34.  The Hancock Lawsuit alleges that Eagle's Pointe breached its duties under the

Residential Landlord and Tenant Act and the 2018 International Residential Code, as adopted by Johnson County, Kansas.

35. The Hancock Lawsuit alleges that Eagle's Pointe is liable for breaching its duty to its tenants to comply with the requirements of applicable building and housing codes that materially affect health and safety, including maintaining in good and safe working order and condition of all heating supplied by Eagle's Pointe.

36. The Hancock Lawsuit alleges that Dennis and Matthew's damages were the direct and proximate result of Eagle's Pointe's failure to provide adequate heating.

37. The Policy's Habitability and Wrongful Eviction Exclusion provides that there is no coverage, and no duty to defend or indemnify any insured for any "occurrence", "suit", liability, demand or cause of action arising, in whole or part, from any matter that pertains to habitability including, but not limited to, any actual or alleged Violations of any Civil Codes or Municipal Codes; actual or alleged Violations of any Health or Safety Codes; actual or alleged violations of any administrative rules or regulations; any allegations or claims under common law; or any other claim that is related to habitability, including but not limited to sanitation, health, safety and all other matters that make a premises habitable or livable for human beings.

38. The Hancock Lawsuit is excluded under the Policy's Habitability and Wrongful Eviction Exclusion because the Hancock Lawsuit pertains to the habitability of Dennis Hancock's apartment.

39. The Hancock Lawsuit is excluded under the Policy's Habitability and Wrongful Eviction Exclusion because it alleges Eagle's Pointe breached its duties owed under civil or municipal codes.

40. The Hancock Lawsuit is excluded under the Policy's Habitability and Wrongful Eviction Exclusion because it alleges Eagle's Pointe breached its duties under applicable health or safety codes.

41. The Hancock Lawsuit is excluded under the Policy's Habitability and Wrongful Eviction Exclusion because it alleges Eagle's Pointe breached its duties under any administrative rules or regulations.

42. The Hancock Lawsuit is excluded under the Policy's Habitability and Wrongful Eviction Exclusion because the alleged common law claims pertain to Eagle's Pointe's duty to provide Hancock with a habitable apartment.

43. The Hancock Lawsuit is excluded under the Policy's Habitability and Wrongful Eviction Exclusion because it is related to habitability, including but not limited to the health, safety, and all other matters that make a premises habitable or livable for human beings.

## COUNT II – NO COVERAGE
## MISCELLENEOUS POLICY PROVISIONS

44. Atain incorporates paragraphs 1-31 as its allegations in this paragraph 44 of Count II.

45. To the extent that the Hancock Lawsuit alleges that Eagle's Pointe acted intentionally, there is no coverage under the Policy's Expected Or Intended Injury Exclusion (Exclusion a.).

46. To the extent any other terms, conditions, exclusions or endorsements under the Policy apply to the Hancock Lawsuit, there is no coverage available to Eagle's Pointe for the Hancock Lawsuit.

47. Alternatively, coverage for the Hancock Lawsuit is limited, to the extent any Policy terms, conditions, exclusions or endorsements limit or reduce the coverage available to Eagle's Pointe.

## REQUESTED RELIEF

**WHEREFORE**, Atain respectfully requests this Court:

a. Take jurisdiction and adjudicate the rights of the parties under the Policy;

b. Find that Atain has no obligation to defend or indemnify Eagle's Pointe for the Hancock Lawsuit; and

d. Award Atain all costs it incurs to prosecute this action, as well as any other relief that this Court deems equitable, just, and proper.

Respectfully submitted,

*/s/ John J. Gates*
John J. Gates          KS #20226
Molly B. Westering     KS #20860
GATES WESTERING LLC
701 East 63rd Street, Suite 350
Kansas City, MO 64110
Telephone:   (816) 448-8530
Fax:         (816) 448-8529
Email:       john@gateswestering.com
             molly@gateswestering.com

John J. Cavo         (*pro hac vice* to be filed)
KAUFMAN DOLOWICH VOLUCK, LLP
30 N. LaSalle St., Suite 1700
Chicago, Illinois 60602
Telephone:   (312) 863-3695
Fax:         (312) 896-9403
Email:       JCavo@kdvlaw.com

ATTORNEYS FOR PLAINTIFF
ATAIN SPECIALTY INSURANCE COMPANY