IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

ATAIN SPECIALTY INSURANCE COMPANY,

          Plaintiff,

v.                                                                                        Case No. 23-2400-JWB

EAGLE'S POINTE, LLC, and
MATTHEW HANCOCK, *individually
and on behalf of the* ESTATE OF
DENNIS HANCOCK,

          Defendants.

**MEMORANDUM AND ORDER**

This matter is before the court on Plaintiff and Defendant Eagle's Pointe, LLC's ("Eagle's Pointe") cross-motions for summary judgment. (Docs. 32, 37.) The motions are fully briefed and ripe for decision.[1] (Docs. 33, 39, 41, 37, 40, 42.) Plaintiff's motion is GRANTED and Eagle's Pointe's motion is DENIED for the reasons stated herein.

**I. Facts**

The matter before the court involves an insurance company and its insured. Atain Specialty Insurance Company, the insurer, is the Plaintiff. Eagle's Pointe, is Plaintiff's insured and one of the Defendants. The other Defendant is Matthew Hancock in his individual capacity and as the representative of the estate of Dennis Hancock. Both Plaintiff and Eagle's Pointe have filed motions for summary judgment. Plaintiff moves for summary judgment against both Defendants,

---

[1] Defendant Matthew Hancock, in both his individual and representative capacity, failed to respond to Plaintiff's motion for summary judgment. The time to do so has now passed. Because Eagle's Pointe responded, the court considered the merits of Plaintiff's summary judgement motion, so its decision will also apply to Defendant Matthew Hancock in both his individual and representative capacities.

1

seeking a declaratory judgment, pursuant to 28 U.S.C. § 2201 and Fed. R. Civ. P. 57, that it has no duty to defend and indemnify Eagle's Point in the underlying lawsuit. (Doc. 37 at 26.) Eagle's Pointe counterclaims and requests that the court require Plaintiff to defend it in the underlying lawsuit and award attorney's fees and costs associated with the matter here and in the underlying matter. (Doc. 33 at 26.)

The dispute before the court involves the interpretation and application of an exclusion within the insurance policy that Eagle's Pointe purchased from Plaintiff. The issue arose because Matthew Hancock, both in his individual capacity and as the Special Administrator of Dennis Hancock's estate, filed a lawsuit against Eagle's Pointe. (*See* Doc. 38-1.) Because the allegations in the underlying lawsuit have a bearing on the present matter, the court briefly describes them here.

On December 23, 2022, Matthew Hancock found Dennis Hancock dead in his apartment. (Doc. 38-1 ¶ 14.) Dennis Hancock rented an apartment unit from Eagle's Pointe. (*Id.* ¶ 8.) Matthew Hancock alleges that in November of 2022, Dennis Hancock reported to Eagle's Pointe that he was concerned about the condition and functioning of his furnace. (*Id.* ¶ 10.) Dennis Hancock's certificate of death listed the cause of death as "Environmental Hypothermia." (Doc. 38-2 at 10.) It also stated that his injury (i.e., death) occurred because of a "poorly or non-heated house during cold weather." (*Id.*) Matthew Hancock sent a settlement demand to Eagle's Pointe before filing the underlying lawsuit, in which he stated that Eagle's Pointe was required to maintain the furnace in Dennis Hancock's apartment and had failed to do so. (*See id.* at 2.) On June 26, 2023, Matthew Hancock filed his first state court petition in the underlying lawsuit. (Doc. 38-4.) In September of 2023, Plaintiff filed this federal declaratory judgment action. (*See* Doc. 1.) After

the filing of this declaratory judgment action, Matthew Hancock filed an amended state court petition.[2] (Doc. 38-1.)

The two claims in Matthew Hancock's amended petition are based on the following alleged negligent conduct:

> Defendant Eagle's Pointe, LLC breached its duty by acting in a careless and negligent manner in at least the following respects:
> a. Failing to properly maintain the furnace in Dennis Hancock's apartment;
> b. Failing to properly inspect the furnace unit in decedent's apartment;
> c. Failing to properly repair the furnace in decedent's apartment;
> d. Failing to adequately supervise its employees and/or agents while they inspected and/or maintained and/or failed to properly repair the furnace unit;
> e. Failing to warn Dennis Hancock of the condition of furnace unit in his apartment and
> f. In all other manners to be identified and discovered through the course of discovery and litigation of this matter.[3]

(Doc. 38-1 at 5.)

Plaintiff argues that it does not have a duty to defend Eagle's Pointe in the lawsuit brought by Matthew Hancock. Upon review of the demand letter from Matthew Hancock and the information known at the time, Plaintiff declined to settle the case and stated that it was reserving its right not to defend or indemnify Eagle's Pointe. (Doc. 33-6 at 1.) When Matthew Hancock filed his amended petition, it again disclaimed coverage for the lawsuit and refused to defend Eagle's Pointe. (Doc. 33-9 at 2.) Plaintiff allegedly made this decision based on the information it had received so far; the information included the Hancock Lawsuit, the demand letter, statements provided by Eagle's Pointe, the policy, and the applicable law. (*See id.*) It disclaimed coverage

---

[2] The title of the filing is "Second Amended Petition for Damages." (Doc. 38-1 at 3.) However, based on the court's understanding of the underlying lawsuit, there was an initial petition and an amended petition filed.
[3] Matthew Hancock has two claims in his amended petition. They are not labeled, but based on the language/context, it seems Matthew Hancock brought a wrongful death claim and survival action for pain and suffering. (Doc. 38-1 at 6–7.)

after reviewing and gathering all that information because of the habitability exclusion in the insurance policy. The habitability exclusion reads as follows:

> This insurance does not apply and there shall be no duty to defend or indemnify any insured for any "occurrence", "suit", liability, "personal and advertising injury", demand or cause of action arising, in whole or part, from any of the following:
>
> 1. Any matter that pertains to habitability including, but not limited to, any of the following:
>    a. Actual or alleged Violations of any Civil Codes or Municipal Codes;
>    b. Actual or alleged Violations of any Health or Safety Codes;
>    c. Actual or alleged violations of any Housing and Urban Development laws, ordinances or statutes;
>    d. Actual or alleged violations of any rent stabilization law or ordinance;
>    e. Actual or alleged violations of any federal, state or local Section 8 law or any other government subsidized programs;
>    f. Actual or alleged violations of any administrative rules or regulations;
>    g. Any allegations or claims under common law; or
>    h. Any other claim that is related to habitability, including but not limited to sanitation, health, safety and all other matters that make a premises habitable or livable for human beings.

(Doc. 38-10 at 35.)

The role of this court is not to decide whether Eagle's Pointe was negligent. That issue will be resolved in the underlying lawsuit. The only responsibility of the court is to determine if Plaintiff must defend Eagle's Pointe in the underlying lawsuit. If so, then Plaintiff will have violated its contractual obligations to Eagle's Pointe, and it will need to provide a defense for Eagle's Pointe and will owe attorney's fees and costs for this declaratory judgment action. By contrast, if the habitability exclusion applies, then Plaintiff will not have to defend or indemnify Eagle's Pointe.

## II.  Standard

Summary judgment is appropriate if the moving party demonstrates that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A fact is "material" when it is essential to the claim, and the issues of fact are

"genuine" if the proffered evidence permits a reasonable jury to decide the issue in either party's favor. *Haynes v. Level 3 Commc'ns*, 456 F.3d 1215, 1219 (10th Cir. 2006). The court views all evidence and reasonable inferences in the light most favorable to the nonmoving party. *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 927 (10th Cir. 2004).

In considering a motion for summary judgment, the facts set forth in the motion must refer "with particularity to those portions of the record upon which" the moving party relies. D. Kan. R. 56.1(a). "All material facts set forth in the statement of the movant will be deemed admitted for the purpose of summary judgment unless specifically controverted by the statement of the opposing party." *Id.* To properly dispute a proposed statement of material fact, the opposing party must "refer with particularity to those portions of the record upon which the opposing party relies." D. Kan. R. 56.1(b)(1). Failure to properly controvert a proposed fact that is properly supported will result in a determination that the fact is admitted. *Coleman v. Blue Cross Blue Shield of Kansas, Inc.*, 287 F. App'x 631, 635 (10th Cir. 2008) (finding that the "district court was correct to admit all facts asserted in Blue Cross's summary judgment motion that are not controverted by a readily identifiable portion of the record.") (internal quotation and citation omitted).

**III.   Analysis**

The court begins its analysis with a brief description of an insured's duty to defend because that is the legal obligation in dispute for this matter. Afterward, the court considers both parties' arguments: beginning with whether the habitability exclusion is ambiguous; second, addressing the nature of the underlying lawsuit; third, evaluating whether case law on the habitability exclusion renders it clear and unambiguous; and lastly, whether Plaintiff's investigation into the underlying lawsuit's claims was deficient.

### A. Insurer's Duty to Defend

An insurance policy is a contract, and as such, the meaning of its terms and language is a matter of law reserved for the courts. *See First Fin. Ins. Co. v. Bugg*, 265 Kan. 690, 694, 962 P.2d 515, 519 (1998), *holding modified by Thomas v. Benchmark Ins. Co.*, 285 Kan. 918, 179 P.3d 421 (2008). When interpreting an insurance policy, it "must be construed according to the sense and meaning of the terms used." *Id.* at 519. Clear language "must be taken in its plain, ordinary, and popular sense," and "courts should not strain to create an ambiguity where, in common sense, there is none." *Id.* The test to determine if an insurance policy is ambiguous is "what a reasonably prudent insured would understand the language to mean." *Farm Bureau Mut. Ins. Co. v. Winters*, 248 Kan. 295, 300, 806 P.2d 993, 996 (1991). If the language is "uncertain, conflicting, or susceptible of more than one construction, the construction most favorable to the insured must prevail." *Id.* at 996. Moreover, the insurer has the duty to draft the terms and exclusions in an explicit manner to ensure the meaning is clear. *See id.* The insurer also carries the burden of demonstrating that an exclusion within the policy applies to a claim or occurrence. *See Speth v. State Farm Fire & Cas. Co.*, 272 Kan. 751, 753, 35 P.3d 860, 862 (2001).

### B. The Habitability Exclusion is Not Ambiguous

Eagle's Pointe asserts that the habitability exclusion in the insurance policy is ambiguous. Eagle's Pointe also claims that because the habitability exclusion is ambiguous, it can be interpreted very broadly and render coverage illusory. (Doc. 33 at 24–25.) Eagle's Pointe primarily takes issue with the policy not defining the terms "habitability" or "habitable." (Doc. 33 at 23–24.) By contrast, Plaintiff argues a landlord would understand what habitability and habitable means because they have legal obligations in Kansas to maintain livable apartment units.

(Doc. 37 at 18; Doc. 39 at 20–21.) Thus, according to Plaintiff, those two terms in the policy are not ambiguous to reasonable insureds that operate apartment complexes.

The court notes that a policy is not per se ambiguous because some terms are not defined. *See Speth*, 35 P.3d at 862. The terms "habitable" or "habitability" are commonly understood in the lessee-lessor context. Indeed, the Supreme Court of Kansas recognized the implied warranty of *habitability* in *Steele v. Latimer*, 214 Kan. 329, 521 P.2d 304 (1974), writing that lessors in urban areas have an implied warranty to provide and maintain premises that are suitable for human habitation. *See id.* at 307. In other words, there is little mystery to the meaning of habitable in the context of renting or leasing apartments: a suitable space for humans to live. Kansas has also codified these duties.[4] *See* K.S.A. § 58-2553. The court acknowledges that a lessee or tenant may not use the terms habitable or habitability, but the court is confident that reasonable tenants understand the substance of the terms habitable or habitability. For example, if a tenant lives in an apartment unit without running water, they would likely report it to their landlord as a major issue affecting the livability of the apartment. And even if the tenant were simply to describe the situation, the landlord would certainly understand that the tenant is making a complaint about the habitability of the apartment unit. After all, as just discussed, a landlord provides an implied warranty of habitability, *see Steele* 214 Kan. at 332, and these duties are codified. *See* K.S.A. § 58-2553. Hence, while a tenant may understand the substantive concept of habitability, yet not necessarily use that word to describe their uninhabitable living situation, a landlord would certainly understand the concept and be familiar with those terms. In effect and applied here, a sophisticated party like the insured in this case cannot claim that it does not know the meaning of "habitability", as it is an owner/operator of an apartment complex that is required by law to provide a warranty

---

[4] One of the duties is to provide reasonable heat. *See* K.S.A. § 58-2553(a)(3) and (5).

of habitability. Additionally, Kansas law codifies those duties/responsibilities, and ignorance of the law is not a legitimate excuse for a failing to abide by it. *Double M Const., Inc. v. State Corp. Comm'n*, 288 Kan. 268, 276, 202 P.3d 7, 13 (2009).

Eagle's Pointe also argues that the phrases "pertain to habitability" and "related to habitability" in the exclusion are vague and ambiguous. (*See* Doc. 40 at 26–28.) Eagle's Pointe claims that this language is unclear because it could exclude specific habitability claims (i.e., breach of implied warranty of habitability), or as in this case, exclude claims that are derived from facts regarding the habitability of an apartment. (*See* Doc. 33 at 23; Doc 40 at 28.) Plaintiff disagrees. It argues that the exclusion clearly excludes both types of lawsuits, (Doc. 39 at 21), and that the amended petition does not allege a single negligent act unrelated to the habitability of Dennis Hancock's apartment. (Doc. 37 at 20–21.) Moreover, Plaintiff asserts that phrases "pertain to" and "related to" are broad but nonetheless clear. (*Id.* at 21.)

The court finds that these phrases on their own are not ambiguous. And further, when they are read within the exclusion, their meaning becomes clearer.

The first phrase: "pertains to habitability" is a phrase in the first sentence of the habitability exclusion, and it introduces the listed circumstances that are excluded under the habitability exclusion: "Any matter that *pertains to habitability* including, but not limited to, any of the following . . . ." (Doc. 38-10 at 35.) Hence, the policy clarifies that "pertains to habitability" means, at a minimum, the categories of situations that follow this exclusion.

One of those categories is "allegations or claims under common law." Negligence is a common law allegation and claim. *See Cooper v. Eberly*, 211 Kan. 657, 658, 508 P.2d 943, 945 (1973) (identifying the claim raised as common law negligence). However, Matthew Hancock's two legal claims are (1) wrongful death and (2) a survival action for pain and suffering. Wrongful

8

death and survival actions are not common law legal claims because at common law, an action did not survive the death of a plaintiff or defendant. *See Prowant v. Kings-X, Inc.*, 184 Kan. 413, 417, 337 P.2d 1021, 1024 (1959) (Jackson, J. dissenting). Nonetheless, these two legal claims are based on six allegations of negligent conduct. The first five are all related to the furnace that stopped working in his apartment. (Doc. 38-10 at 35.) They include a failure to maintain, inspect, and repair the furnace, as well as allegations that Eagle's Pointe's employees failed to warn Dennis Hancock of the condition of his furnace and that Eagle's Pointe did not adequately supervise its employees when they inspected, maintained, and repaired the furnace. (*See id.*) While the sixth allegation denotes a general intent to raise any other bases for negligence that might be revealed through discovery, in any lawsuit there is a risk that the pleadings might be amended to assert additional claims identified in discovery. Accordingly, the lawsuit as currently pled sounds in common law negligence claims that resulted in the death of Dennis Hancock, so the common law exclusion would apply to the claims being raised in the underlying lawsuit.

The court could stop its analysis there because the contractual language clearly contemplates the exclusion of a common law negligence claim premised upon the livability of an apartment unit. Nonetheless, Plaintiff included a catch-all provision in the policy, in which the second allegedly ambiguous phrase is located: "Any other claim that is *related to habitability*, including but not limited to sanitation, health, safety and all other matters that make a premises habitable or livable for human beings." (Doc. 38-10 at 35.) This is a broadly phrased exclusion, but it is not ambiguous because the last clause clarifies that a claim related to habitability is based upon the livability of an apartment unit for a human. As discussed above, Matthew Hancock's negligence claims are premised upon the non-livability of his father's apartment. Moreover, even if the common law claim exclusion only applied to specific common law habitability claims like

breaches of the implied warranty of habitability, Mathew Hancock's negligence claims would fall under the catch-all exclusion because it excludes "any claim" based upon the livability of the apartment unit.

The court acknowledges that Plaintiff's habitability exclusion is broad. However, Eagle's Pointe is a sophisticated party. It could have requested a definition of "habitability" and/or clarified the extent of the habitability exclusion. Additionally, Eagle's Pointe could have sought a different policy because of the broad habitability exclusion. It did none of these things. Therefore, the court finds that the habitability exclusion is not ambiguous, and it grants Plaintiff's motion for summary judgment on this issue.

### C. The Basis of the Underlying Lawsuit is the Habitability of the Apartment Unit

Because the habitability exclusion is not ambiguous, the court must now determine if the underlying state lawsuit is excluded from coverage because of the habitability exclusion. Plaintiff argues that it is excluded because each negligence claim (listed above in Section II) in Matthew Hancock's underlying lawsuit is premised upon the habitability of his apartment. To bolster its argument, Plaintiff relies on Dennis Hancock's certificate of death, which states that the cause of death was "environmental hypothermia" because of a "poorly or non-heated house during cold weather." (Doc. 38-2 at 10; Doc. 37 at 17–18.) Eagle's Pointe does not dispute that the death certificate listed environmental hypothermia as the cause of death. (Doc. 40 at 7.) However, Eagle's Pointe takes issue with Plaintiff's unwillingness to consider that Dennis Hancock's health may have contributed to his death. Additionally, Eagle's Pointe argues that its negligence may not have been the cause of Dennis Hancock's death because Dennis Hancock's furnace could have failed without warning in the middle of the night. Both of these arguments are plausible, and they may be legitimate defenses in the underlying lawsuit.

However, the court is not deciding whether Eagle's Pointe was negligent; rather, it is determining if the claims Matthew Hancock alleges in his second amended complaint fall under the habitability exclusion. Unfortunately for Eagle's Pointe, even if Dennis Hancock's health contributed to his death, the undisputed evidence indicates that he suffered environmental hypothermia. Additionally, even if the furnace did fail without warning in the middle of the night, that defense remains premised on the habitability of the apartment such that, if the furnace did in fact fail in the middle of the night, his apartment would have been uninhabitable at that point in time.

Eagle's Pointe also argues that Matthew Hancock's several claims of negligence are multiple occurrences under the policy. (*Id.* at 20.) Accordingly, even if some of these alleged occurrences are not covered, if one is covered, then Plaintiff must fulfill its duty to defend Eagle's Pointe. Plaintiff agrees with Eagle's Pointe's description of the duty to defend, but it disagrees that the policy plausibly covers any negligence claim in the complaint.

The court notes that Matthew Hancock's negligence claims cannot be segregated from their facts. The habitability exclusion specifies that common law claims or any claim based upon the habitability of a unit are excluded. The legal claim(s) in the underlying case are based on negligence, and the facts forming the basis of the negligence claims are necessarily intertwined with the habitability of Dennis Hancock's apartment. Every negligence claim in the underlying lawsuit is based upon the failure to provide a habitable apartment unit. (*See* Section III.B.) Moreover, the habitability exclusion is broader than Eagle's Pointe asserts. Occurrences, suits, liability, personal and advertising injuries, and demands or causes of action that fall under the habitability exclusion are excluded from coverage. Here, not only is each occurrence based upon the habitability of the apartment, but the entire suit is based upon that argument.

11

Therefore, the court finds that the underlying lawsuit is premised upon the habitability of Dennis Hancock's apartment, and as such, the habitability exclusion applies.

### D.      Case Law on Habitability Exclusions

Eagle's Pointe argues in the alternative that even though the allegations seem to fall under the habitability exclusion, case law supports a determination that Plaintiff must defend Eagle's Pointe in the underlying lawsuit. Eagle's Pointe relies on a Sixth Circuit case, *Hamilton Specialty Ins. Co. v. Transition Inv., LLC*, 818 F. App'x 429 (6th Cir. 2020), in which the Sixth Circuit held a habitability exclusion did not exclude coverage for a fatal fire caused by a stove. *See id.* at 435. In *Hamilton*, the habitability exclusion excluded coverage for bodily injuries, property damage, etc. arising out or resulting from violations of civil codes, health and safety codes, housing laws, and administrative regulations. *See id.* at 431, 434. The court's analysis focused on the meaning of damages "arising out of" and "resulting from" violations of housing laws. *See id.* at 434. The court found the exclusion inapplicable because the record indicated that negligence caused the fire and the resulting damages, not the possible statutory violations. Thus, even if the insured had committed statutory violations, according to the court, the record indicated that the claim in the underlying lawsuit was based on the insured's negligence, not its statutory violations. *See id.* at 435. The court explained that there needed to be a "casual [sic] nexus between the complained of condition and the liability allegations of the complaint." *See id.* (quotation and citation omitted). And the court concluded that the record indicated that the causal nexus was negligence, not the statutory violations. *See id.* The court also noted that the complaint gave no indication that the "claim arose from . . . statutory violations." *Id.*

It appears that Eagle's Pointe relies on *Hamilton* for the argument that possible legal claims in a complaint can be different even if they arise from the same facts. (Doc. 33 at 21.) For instance,

12

Eagle's Pointe asserts that negligence and a breach of the implied warranty of habitability are different claims. (*See id.*) Based on Eagle's Pointe's briefings, it seems that Eagle's Pointe is trying to argue that because Mathew Hancock amended his complaint by removing the statutory violation claims and never asserted a claim for breaching the implied warranty of habitability, his claims are now unrelated to habitability because he only asserts negligence claims.

By contrast, Plaintiff argues that *Hamilton* can be distinguished from the current case and that the negligence claims in the underlying lawsuit cannot be separated from the habitability of Mr. Hancock's apartment. First, Plaintiff argues that the exclusion clause in the present case is much broader than the one in *Hamilton*. (Doc. 37 at 24.) Here, the habitability exclusion not only applies to violations of housing statutes and codes, but also to "actions at common law" and pertaining and relating to habitability. (Doc. 38-10 at 35.) There is also a broad clause that excludes "any other claim that is related to habitability, including but not limited to … health, safety and all other matters that make a premises habitable or livable for human beings." (*Id.*) The habitability exclusion in *Hamilton* did not include this broad language, and the Sixth Circuit's focus in *Hamilton* was on whether the record indicated that the alleged damage resulted from violations of housing laws or from negligence. Moreover, the habitability exclusion in this matter indicates that there is no coverage for common law allegations or claims (e.g., allegations of negligence) or any claim relating to the habitability of an apartment. (*See* Section III.C.) And the facts forming the basis of the negligence allegations and claim in the underlying lawsuit are necessarily intertwined with the habitability of Dennis Hancock's apartment. (*See id.*) Therefore, because (1) the exclusion clause is broader than the one in *Hamilton*, and (2) the negligence allegations as well as the wrongful death claim and survival action in the underlying lawsuit are based upon the failure to provide a habitable apartment unit, the court rejects Eagle's Pointe's

argument that case law on habitability exclusions requires Plaintiff to defend Eagle's Pointe in the underlying lawsuit.

### E. Plaintiff's Investigation of the Underlying Claims

Eagle's Pointe also raises concerns about Plaintiff's investigation into whether the underlying lawsuit triggered its duty to defend. Eagle's Pointe asserts that Plaintiff breached its duty to defend because (1) it failed to compare the factual allegations in the complaint against the policy, and (2) did not look beyond the pleadings to determine whether coverage applied.[5] (Doc. 33 at 15.)

However, Eagle's Pointe does not put forth evidence that supports these allegations. Instead, Eagle's Pointe proffers self-proving arguments. Regarding the first claim, Eagle's Pointe asserts that Plaintiff clearly did not compare the policy to the complaint because if it had, then it would have concluded that coverage applied. Eagle's Pointe makes a similar argument for the second claim. According to Eagle's Pointe, Plaintiff did not look beyond the pleadings because if it had reviewed email correspondence between Libby and Hugo Valiente, then it would have concluded that Eagle's Pointe had meritorious defenses in the underlying lawsuit and that the duty to defend was triggered.

Plaintiff responds to the first argument by reiterating that there is no duty to defend when the allegations within the complaint are outside of the insurance policy's coverage. *See Spruill Motors, Inc. v. Universal Underwriters Ins. Co.*, 212 Kan. 681, 684, 512 P.2d 403, 406 (1973). As

---

[5] Defendant also alleges that Plaintiff deficiently investigated whether Matthew Hancock's claims were covered under the policy. Defendant phrases this allegation as a breach of contract claim, yet it appears to be a claim against an insurer for breaching the duty to act with reasonable care or in good faith. After all, Defendant cites a case that phrases the duty to investigate as falling under the broad duty to act in good faith. *See* Doc. 33 at 18 (citing *Knuth v. State Farm Mut. Auto. Ins. Co.*, 30 Kan. App. 2d 184, 186, 41 P.3d 287, 289 (2000) (stating that an insurer has a duty to investigate a matter in good faith). However, upon review of the pretrial order, Defendant has not preserved a bad faith claim against Plaintiff. Thus, it will not be considered at this time.

explained in Section III.C, the allegations in Mr. Hancock's Second Amended complaint all pertain to the habitability of the apartment unit, and thus, are excluded from coverage.

Eagle's Pointe's second argument also lacks merit.  Plaintiff argues that even if Eagle's Pointe could assert meritorious defenses, it would not have the duty to defend because an insurer's duty to defend is not based upon an insured's defenses but upon the complaint and the facts reasonably known to the insurer.  (Doc. 39 at 23) (citing *Williams v. Cmty. Drive-In Theatre, Inc.*, 3 Kan. App. 2d 352, 353, 595 P.2d 724, 725 (1979)).  The Kansas Court of Appeals determined in *Williams* that an insurer's duty to defend is not based on the insured's defenses to the claims in the underlying lawsuit.  *See* 595 P.2d at 725.  In responding to Plaintiff's argument, Eagle's Pointe references email correspondence that it claims should have proven to Plaintiff that it had meritorious arguments indicating Matthew Hancock's claims were covered.  However, the citation for this claim is to Exhibit I, (Doc. 43), and Exhibit I is not email correspondence but appears to be Matthew Hancock's amended petition for damages.  Hence, alternatively, even if the court could consider the defenses in the underlying lawsuit, Eagle's Pointe failed to provide them to the court so they could not be evaluated/considered at this stage in the proceeding.

Therefore, the court rejects Eagle's Pointe's arguments that Plaintiff breached the duty to defend by failing to compare the complaint against the policy and/or look beyond the pleadings to determine whether coverage applied.

## IV. Conclusion

THEREFORE, Eagle's Pointe's motion for summary judgment is DENIED.  Plaintiff's motion for summary judgment is GRANTED.  The court further DECLARES that Plaintiff does not have a duty to defend or indemnify Eagle's Pointe in the underlying lawsuit, and consequently, that it did not breach its contractual obligations set forth in the insurance policy.

IT IS SO ORDERED. Dated this 22nd day of November, 2024.

s/ John W. Broomes
JOHN W. BROOMES
UNITED STATES DISTRICT JUDGE